U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2019 SEP -9  AM 11: 50

CLERK

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA,                          )
                                                   )
       Plaintiff,                                  )
                                                   )
v.                                                 )
                                                   )  Civil No.  2:19-cv-156
JUSTINE FARROW, VERMONT HOUSING FINANCE            )
AGENCY, VERMONT HOUSING CONSERVATION               )
BOARD, RUTLAND WEST NEIGHBORHOOD                   )
HOUSING SERVICES and                               )
ANY TENANTS OR OCCUPANTS RESIDING AT               )
225 STATE STREET, RUTLAND, VT 05701,               )
                                                   )
       Defendants.                                 )

## COMPLAINT FOR FORECLOSURE BY POWER OF SALE

**NOTICE TO DEFENDANTS**: In order to receive notice of the Foreclosure Judgment,

you are required by law to enter an appearance in this action either through an attorney or on

your own behalf after service has been made upon you by the United States of America and you

have returned your waiver of service of summons to the Office of the United States Attorney.  If

such appearance is not filed with the Clerk of the United States District Court within sixty (60)

days of service of this Complaint, you will not receive notice of the Foreclosure Judgment which

will set forth the amount of money you must deposit to redeem the property and the amount of

time allowed you to redeem the property.

## NOTICE TO ALL TENANTS AND OCCUPANTS
## OF REAL PROPERTY AS REQUIRED BY 12 V.S.A. § 4932(c)(2):

**THE PROPERTY IN WHICH YOU LIVE IS BEING FORECLOSED UPON.  YOU ARE
NAMED AS A DEFENDANT IN THE FORECLOSURE BECAUSE YOUR RIGHT TO
REMAIN ON THE PREMISES MAY END WHEN THE FORECLOSURE IS
COMPLETED.  YOU MUST NOTIFY THE COURT OF YOUR NAME AND ADDRESS
IN ORDER TO BE KEPT INFORMED OF THE STATUS OF THE FORECLOSURE.**

**YOU ARE ALSO ADVISED, PURSUANT TO 12 V.S.A. § 4932(c)(3), THAT, IN THE EVENT THE OWNER IS UNABLE TO REDEEM THE PREMISES, YOU MAY BE REQUIRED TO VACATE THE PREMISES UPON 30 DAYS NOTICE.**

The United States of America, by its attorney, Christina E. Nolan, United States Attorney for the District of Vermont, brings this Complaint and states as follows:

### Introduction, Jurisdiction, and Parties

1.     This is a civil action to foreclose by power of sale two mortgages given by Defendant Justine Farrow ("the Borrower"). The first mortgage was given to the Plaintiff, the United States of America ("the United States"), on or about August 15, 2000. The second mortgage was given by the Borrower to the Community Development Credit Union, now known as Opportunities Credit Union, on or about August 15, 2000 and was assigned to the United States on or about February 2, 2018.

2.     This Court has jurisdiction in this matter under 28 U.S.C. § 1345 and 42 U.S.C. § 1490a.

3.     The mortgaged property has been abandoned by the Borrower and is not presently occupied by her as her primary residence.

4.     On information and belief the last known addresses of the Defendants are as follows:

Justine Farrow
691 Stannard Mountain Road
Greensboro Bend, VT 05842

Vermont Housing Finance Agency
P.O. Box 40
Burlington, VT 05402

Rutland West Neighborhood Housing Services
110 Marble Street
West Rutland, VT 05777

2

Vermont Housing Conservation Board
58 East State Street
Montpelier, VT 05602

Any Tenants or Occupants residing at
225 State Street
Rutland, VT 05701

5.      The Vermont Housing Finance Agency ("VHFA") is named as a defendant
because it has or may claim an interest in the mortgaged property by virtue of a mortgage dated
August 15, 2000 and recorded on August 16, 2000 in Book 403, Page 8 of the City of Rutland
Land Records. The VHFA's interest in the property, if any, is subsequent or subordinate to the
mortgages which are the subject of this action.

6.      The Vermont Housing and Conservation Board ("VHCB") is named as a
defendant because it has or may claim an interest in the mortgaged property by virtue of a
housing covenant dated August 15, 2000 and August 21, 2000 and recorded on August 29, 2000
at Volume 403, Page 286 of the City of Rutland Land Records. VHCB may also claim an
interest in the mortgage property by virtue of a mortgage dated January 4, 2001 and recorded on
January 12, 2001 in Book 407, Page 470 of the City of Rutland Land Records. The VHCB's
interests in the property, if any, are subsequent or subordinate to the mortgages which are the
subject of this action.

7.      The Rutland West Neighborhood Housing Services ("RWNHS") is named as a
defendant because it has or may claim an interest in the mortgaged property by virtue of a
mortgage dated June 15, 2001 and recorded on June 28, 2001 in Book 415, Page 61 of the City
of Rutland Land Records. The RWNHS' interest in the property, if any, is subsequent or
subordinate to the mortgages which are the subject of this action.

8.      Tenants or Occupants of the mortgaged premises, if any, are named as defendants
pursuant to 12 V.S.A. § 4932(c)(1) for the purpose of providing notice of the pendency of this

3

action. The United States does not know whether the property will be tenant-occupied at the time the judgment order, decree of foreclosure, and order for judicial sale are entered in this proceeding. Such tenants or occupants, if any, are entitled to notice of these proceedings but are not entitled to a right of redemption. In the event that the mortgage is foreclosed, the interests of all tenants or occupants, if any, shall be foreclosed and they shall have no further interest as tenants, occupants, or otherwise, in the property. The United States, or the purchaser at the judicial sale, shall have the right to seek and enforce a writ of possession and neither the United States nor the purchaser at the judicial sale shall be obligated or required to institute an eviction proceeding against any tenants or occupants.

## Foreclosure by Power of Sale

### Count I:  USDA Mortgage

9.     On or about August 15, 2000 Justine Farrow duly executed to the United States of America a real estate mortgage covering certain land and premises described therein ("the Property"). Paragraph 25 of the mortgage reserves to the United States the right to foreclose the mortgage as authorized by state and/or federal laws, including but not limited to foreclosure by power of sale. A copy of the mortgage is attached to and made a part of this Complaint as Exhibit A.

10.     The mortgage was duly recorded on August 16, 2000 at Volume 403, Page 1 of the City of Rutland Land Records.

11.     The property subject to the mortgage is described as:

Being all the same lands and premises conveyed to Justine V. Farrow by Warranty Deed of Mary F. Baccei, Stephen F. Baccei, Maria T. Reczek and Gregory E. Baccei dated August 15, 2000 and recorded August 16, 2000 at Volume 402, Page 826 of the City of Rutland Land Records.

Beginning at an iron pin at the intersection of the North line of said State Street Extension and the East line of said Hazel Street; thence in the last-named line One

4

Hundred and twenty feet (120') to an iron pin; thence Easterly in a straight line to an iron pin located about Sixty feet (60') from and West of the West line of Cora E. Crawford and One Hundred and five feet (105') from the North line of said State Street Extension; thence Southerly in a line parallel with the said West line of said Crawford to the North line of said State Street Extension; thence Westerly in the last-named line to the point of beginning.

Excepting and reserving herefrom is the conveyance from Mary F. Baccei, Stephen F. Baccei, Maria T. Reczek and Gregory E. Baccei to Stephen F. Baccei and Karen Baccei, husband and wife, by Warranty Deed dated January 10, 1995, which is subject to Deferral of Permit #DE-1-1816 dated December 19, 1994 and recorded in the Rutland City Land Records in Book 342 at Page 284.

Reference is also made to the State of Vermont, Department of Environmental Conservation, Homestead Exemption #HE-1-0481 dated December 19, 1994.

Subject to a first mortgage given by Justine V. Farrow to Vermont Development Credit Union and to be recorded simultaneously herewith in the Rutland City Land Records.

Reference is hereby had and made to the aforementioned deeds and the record and references thereof, and to all prior deeds and their records, for a more particular description of the lands and premises herein conveyed.

12.     The mortgage was conditioned upon the payment of a certain promissory note, dated August 15, 2000 in the principal sum of $61,800.00 and bearing interest at the rate of 7.375% per annum.  A copy of the note is attached to and made a part of this Complaint as Exhibit B.

13.     The Borrower subsequently gave the United States a second promissory note, dated September 15, 2005, in the principal sum of $7,000.00 and bearing interest at the rate of 1.000% per annum. A copy of the note is attached to and made a part of this Complaint as Exhibit C.

14.     The mortgage further secures repayment of any subsidy granted to the Borrower in the form of interest credit pursuant to a subsidy repayment agreement dated August 15, 2000. A copy of said agreement is attached to and made a part of this Complaint as Exhibit D.

15.     The subsidy repayment agreement expired on April 30, 2018, at which time the monthly payment shown on the face of the promissory note became effective. Pursuant to 42 U.S.C. § 1490a and the terms of the mortgage, any interest credit assistance received on any mortgages given on or after October 1, 1979 is subject to recapture upon the disposition of the property.

16.     The note provides that upon default by the Borrower of any payment, the United States at its option may declare all or any part of any such indebtedness immediately due and payable. Because the Borrower defaulted on the note, acceleration and demand for full payment took place on August 7, 2017 and notice was sent to her at the address last provided to RHS by the Borrower. The Borrower further defaulted on her obligations by abandoning the property.

17.     Though demand was made, the Borrower refused, neglected, or was unable to pay the amounts due pursuant to the terms of the promissory notes.

On the promissory noted dated August 15, 2000, there is due and owing by the Borrower to the United States as of September 6, 2019, the principal sum of $47,254.84 plus interest in the amount of $11,094.84, which interest accrues at the daily rate of $9.55. There is further due and owing interest credit subsidy subject to recapture and principal reduction attributed to subsidy in the amount of $27,448.70, as described in paragraph 11 above. There is further due and owing escrow in the amount of $1,053.89. There is further due and owing late charges of $97.96. There are further due and owing fees assessed at $30,992.82.

On the promissory note dated September 15, 2005, there is due and owing by the Borrower to the United States as of September 9, 2019, the principal sum of $3,249.75, plus interest in the amount of $103.70. There is further due and owing late charges of $15.36.

6

## Count II:  Credit Union Mortgage

18.     On or about August 15, 2000 Justine Farrow duly executed to the Opportunities Credit Union, formerly known as Vermont Development Credit Union, ("Credit Union") a real estate mortgage ("CU Mortgage") covering the Property.

19.     The mortgage was duly recorded on August 16, 2000 at Volume 402, Page 828 in the City of Rutland Land Records.  A copy of the mortgage is attached hereto as Exhibit E.

20.     The mortgage was conditioned upon the payment of a certain promissory note, dated August 15, 2000 in the principal sum of $12,500.00 and bearing interest at the stepped up rates 5.6%, 6.1%, 6.6% and 7.1% per annum.  A copy of the note is attached to and made a part of this Complaint as Exhibit F.

21.     On or about February 2, 2018, the Credit Union assigned to the United States the the CU Mortgage.  The assignment was recorded at Book 671, Page 988 in the Land Records for the City of Rutland.  A copy of the assignment is attached to and made a part of this Complaint as Exhibit G.

22.     On information and belief, in order that it may protect and preserve its security, the United States may be compelled to make advancements for payment of taxes, hazard insurance, water and sewer charges, or other municipal assessments.  Although the nature and amount of such expenses are unknown to the United States at this time, the United States seeks recovery of those expenses, together with interest thereon.

23.     The Borrower is no longer residing at the mortgaged premises and the Property is subject to waste and deterioration because it is vacant.  A shortened redemption period of ten days is appropriate and necessary to protect the property and the government's interests.

24. No other action has been brought to enforce the provisions of the aforesaid promissory note and real estate mortgage, and all conditions precedent to the bringing of the action have been performed or have occurred.

25. The United States has complied with the requirements of all applicable servicing regulations.

WHEREFORE, THE PLAINTIFF PRAYS:

a. That the Defendants' equity of redemption be foreclosed in accordance with law;

b. That the Court enter an order shortening the redemption period to ten (10) days;

c. That the Court enter, pursuant to the United States' exercise of its right to a foreclosure by public sale, an order for public sale of the mortgaged premises;

d. That the Court award expenses incurred by Plaintiff to preserve and protect its security;

e. That the Court fix and allow attorney's fees and other costs and expenses incident to this proceeding;

f. That the United States of America or the purchaser at the judicial sale be granted a writ of possession in the mortgaged premises;

g. And for such other and further relief as this Honorable Court may deem just and equitable.

Dated at Burlington, in the District of Vermont, this 9th day of September, 2019.

Respectfully submitted,

UNITED STATES OF AMERICA

CHRISTINA E. NOLAN
United States Attorney
By: MELISSA A.D. RANALDO
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Melissa.Ranaldo@usdoj.gov

8

**403001**

*1809226/*

RECEIVED
SEP 08 2000
Imaging Form Approved
OMB No. 0575-0172

Form RD 3550-14 VT
(11-96)

[Space Above This Line For Recording Data]

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR VERMONT

THIS MORTGAGE ("Security Instrument") is made on      August ~~14~~ 15 , 2000   [Date]
The mortgagor is JUSTINE V. FARROW                       ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| August ~~14~~ 15, 2000 | $61,800.00 | August ~~14~~ 15, 2033 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose and in consideration of the debt, Borrower does hereby mortgage, grant, and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the Town of Rutland      ,
County of Rutland                                , State of Vermont:

SEE SCHEDULE A ATTACHED...

which has the address of      225 State Street          Rutland
                           [Street]               [City]
Vermont          05701      ("Property Address");
               [ZIP]

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instruction, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Agriculture, Clearance Officer, STOP-7602, 1400 Independence Ave., S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB number.*

Page 1 of 6



GOVERNMENT
EXHIBIT
_A_

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien

in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender

shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefits of any such State laws. Borrower hereby relinquishes, waives. and conveys all rights. inchoate or consummate, of descent, dower, and curtesy.

**25.** Upon default by Borrower as aforesaid, Lender may foreclose this instrument as authorized or permitted by the laws then existing of Vermont and of the United States of America, on terms and conditions satisfactory to Lender, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the Property at public auction to the highest bidder in one or more parcels at Lender's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by

Lender if not contrary to statute, or (c) written agreement hereafter made between Borrower and Lender.

**26. Release.** PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void; otherwise it shall remain in full force and effect.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider       ☐ Planned Unit Development Rider       ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

Signed, sealed, and delivered in the presence of:

_____     _____(Seal)
               *Witness*            JUSTINE V. FARROW    *Borrower*

_____     _____(Seal)
               *Witness*                                *Borrower*

STATE OF VERMONT

COUNTY OF _____ } ss : **ACKNOWLEDGMENT**

On this _____ day of _____, 200__; before me, the undersigned, a Notary Public in and for said State and County, personally appeared _____

_____, individually known to me and by me known to be the party(ies) executing the foregoing instrument, and to me acknowledged the said instrument to be executed by _____ as _____ free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal on the date above written.

My commission expires: _____     _____
                                                *Notary Public*

(NOTARIAL SEAL)

CITY OF RUTLAND, RECEIVED FOR RECORD
DATE 8-16-00 TIME 9:10 AM
BOOK 403 PAGE 1-7
marthwent ASST. CITY CLERK
Pd to Reiba, Kenlan

EXHIBIT A/SCHEDULE A

Being all and the same lands and premises conveyed to Justine V.
Farrow by Mary F. Baccei, Stephen E. Baccei, Maria T. Reczek and
Gregory E. Baccei by Warranty Deed dated August _____, 2000, to
be recorded in the Rutland City Land Records, and more particu-
larly described in said Deed as follows:

"Being all and the same lands and premises being conveyed to Mary F. Baccei, Stephen F. Baccei,
Maria T. Reczek, and Gregory E. Baccei, by Quit Claim Deed of J. Fed Carbine dated April 11,
1989 and recorded in the City of Rutland Land records in Book 284 at Page 232.

"Being all and the same lands and premises being conveyed to J. Fred Carbine, Jr. by Mary F.
Baccei by warranty deed of even date herewith. The premises are more particularly described as
being all and the same lands and premises conveyed to Andrew G. Baccei and Mary F. Baccei,
husband and wife, (Andrew C. Baccei now deceased) by William R. Mangan and Marion E..
Mangan by deed, dated October 21, 1950 recorded in the land records of the City of Rutland in
Book 90 at page 208. The premises in said deed are bounded and described as follows:

"Being the same land and premises conveyed to the grantors herein by Mary K. Mangan,. by her
deed dated October 15, 1948 and recorded in the City of Rutland Land Records in Book 85 at
Page 369. The land and premises hereby conveyed being therein described d as follows:

Beginning at an iron pin at the intersection of the North line of said State Street Extension and
the East line of said Hazel Street; thence in the last-named line One Hundred and twenty feet
(120') to an iron pin; thence Easterly in a straight line to an iron pin located about Sixty feet (60')
from and West of the West line of Cora E. Crawford and One Hundred and five feet (105') from
the North line of said State Street Extension; thence Southerly in a line parallel with the said
West line of said Crawford to the North line of said State Street Extension; thence Westerly in
the last-named line to the point of beginning.

Being the same lands and premises decreed to Mary K. Mangan by the District of Rutlatd Probate
Court and dated September 14, 1948 and recorded in the City of Rutland Land Records in Book
84 at page 376 to which decree reference may be had.

Being the same land deeded to William S. Mangan by Elmer E. Shedd and Mary L. Shedd
Perkett, as Administrators of the Estate of Harrison H. Shedd by their deed dated the 29th day of
May .908, and recorded in the City of Rutland Land Records in Book 9 at Page 277; and also of
Elmer E. Shedd by this deed dated the 29th day of May 1908, and recorded in the City of Rutland
Land Records in Book 23, at Page 300, to which deeds and the records thereof reference may be
had for a further and more particular description."

Excepting and reserving herefrom is the conveyance from Mary F. Baccei, Stephen F. Baccei,
Maria T. Reczek and Gregory E. Baccei to Stephen F. Baccei and Karen Baccei, husband and wife,
by Warranty Deed dated January 10, 1995, which is subject to Deferral of Permit # DE-1-1816
dated December 19, 1994 and recorded in the Rutland City Land Records in Book 342 at Page 284.

Reference is also made to State of Vermont, Department of Environmental Conservation,
Homestead Exemption #HE-1-0481 dated December 19, 1994."
Subject to a first mortgage given by Justine V. Farrow to Vermont Development Credit
Union and to be recorded simultaneously herewith in the Rutland City Land Records.

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan **SECTION** 502                                    Loan No. 0018092261

Date: August ~~14~~ 15 , 2000

225 State St.
(Property Address)

Rutland , Rutland , Vermont
(City or Town)   (County)   (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the Unite
States of America, acting through the Rural Housing Service (and its successors)("Government") $ 61,800.00
(this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I w
pay interest at a yearly rate of 7.375 %. The interest rate required by this section is the rate I will pay both befor
and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

☐ I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , ____
shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regula
amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of
such new principal here: $_____ , and the amount of such regular installments in the box below whe
such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below

☒ II. Payments shall not be deferred. I agree to pay principal and interest in 396 installments as indicated
the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of each month beginning on October 01 , 2000 and continuin
for 395 months. I will make these payments every month until I have paid all of the principal and interest and an
other charges described below that I may owe under this note. My monthly payments will be applied to interes
before principal. If on August ~~14~~ 15 , 2033 , I still owe amounts under this note, I will pay those amounts in full o
that date, which is called the "maturity date."
My monthly payment will be $ 416.63 . I will make my monthly payment at the post office
address noted on my billing statement or a different place if required by the Government

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, t
unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. T
Government must make the advance provided the advance is requested for an authorized purpose. Interest sh
accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advanc
below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for t
type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the prese
regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1



GOVERNMENT
EXHIBIT
B

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of <u>15</u> days after the date it is due, I will pay a late charge. The amount of the charge will be <u>4.000</u> percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 50 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Account # 0018092261

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_____ Seal          _____ Seal
JUSTINE V. FARROW   Borrower                       Borrower

_____ Seal          _____ Seal
          Borrower                                   Borrower

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| (1) $ |  | (8) $ |  | (15) $ |  |
| (2) $ |  | (9) $ |  | (16) $ |  |
| (3) $ |  | (10) $ |  | (17) $ |  |
| (4) $ |  | (11) $ |  | (18) $ |  |
| (5) $ |  | (12) $ |  | (19) $ |  |
| (6) $ |  | (13) $ |  | (20) $ |  |
| (7) $ |  | (14) $ |  | (21) $ |  |
| | | | | TOTAL $ | |

Account #: 0018092261

3

Form RD 1940-16
(Rev. 6-99)

Form Approved
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL HOUSING SERVICE**

## PROMISSORY NOTE

Type of Loan  SECTION 504                          Loan No. 32273778

Date: 09-15-2005

225 State Street
_____
(Property Address)
Rutland          Rutland          VT
_____
(City or Town)      (County)        (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 7,000.00 (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _____1_____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in _____240_____ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the __1st__ day of each month beginning on ___November 1___, _2005_ and continuing for _239_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __September 15__, _2025_, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 32.20_____. I will make my monthly payment at the post office address noted on my billing statement or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.



GOVERNMENT
EXHIBIT
C

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of __15__ days after the date it is due, I will pay a late charge. The amount of the charge will be ____4____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # 32273778

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch
 Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal
Borrower Justine Farrow

_____ Seal
Borrower

_____ Seal
Borrower

_____ Seal
Borrower

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| TOTAL $ | | | | | |

3

Form RHS 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

Account #: 0018092261

## SUBSIDY REPAYMENT AGREEMENT

1.   As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.   When I fail to occupy or transfer title to my home, recapture is due.  If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated.  If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full.  In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.   Market value at time of initial subsidy $ _81,000.00_ *   less amount of Rural Housing Service (RHS) loans $_61,800.00_  less amount of any prior liens $ _12,500.00_   equals my/our original equity $_6,700.00_ .  This amount equals _8.3_ % of the market value as determined by dividing original equity by the market value.

4.   If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans.  Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | | Average interest rate paid | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.   **Calculating Recapture**

Market value (at the time of transfer or abandonment)
LESS:
   Prior liens
   RHS balance,
   Reasonable closing costs,
   Principal reduction at note rate,
   Original equity (see paragraph 3), and
   Capital improvements.
EQUALS
   Appreciation Value. (If this is a positive value, continue.)
TIMES
   Percentage in paragraph 4 (if applicable),
   Percentage in paragraph 5, and
   Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
   Value appreciation subject to recapture.  Recapture due equals the lesser of this figure or the amount of subsidy received.

\*Market Value of $93,000.00 reduced
to reflect acquisition cost less
VHFA Progress Grant.

See Addendum

| Borrower | Date |
|---|---|
| JUSTINE V. FARROW | August 14, 15 2000   JVF |
| Borrower  _Justine V Farrow_ | Date |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602.  Please DO NOT RETURN this form to this address.  Forward to the local USDA office only.  You are not required to respond to this collection of information unless it displays a currently valid OMB control number.


GOVERNMENT EXHIBIT

## SUBSIDY REPAYMENT AGREEMENT ADDENDUM

The fee simple market appraisal is $93,000.00.  The borrower received a $12,000.00 grant from the Vermont Housing Finance Agency through Vermont Development Credit Union. The grant is subordinate to the Rural Development loan.  Under the agreement, the borrower agrees to restrict market value equity in  future transfers, and Rural Development agrees to use the restricted price in calculating value appreciation for Payment Assistance Recapture.  For this Subsidy Repayment Agreement, the fee simple market value appraisal is reduced by the VHFA grant which is used to reduce the property acquisition costs to the borrower.

402828

-------------------(Space Above This Line For Recording Data)-------------------

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on _____August_____ 15th _____
20 00 . The mortgagor is _____Justine V. Farrow_____
_____ ("Borrower"). This Security Instrument is given to_____
**VERMONT DEVELOPMENT CREDIT UNION**_____ , which is organized and existing
under the laws of the State of Vermont, and whose address is _____
**18 PEARL STREET, BURLINGTON, VERMONT 05401**_____ ("Lender").
Borrower owes Lender the principal sum of ___Twelve Thousand Five Hundred___
___and NO/100 - - - - - - - - - - - - - - - - - -___ Dollars (U.S. $ 12,500.00 _____). This debt is evidenced by
Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the
full debt, if not paid earlier due and payable on_____ 09/01/30 _____. This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note;  (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note.  For this purpose and in consideration of the debt, Borrower does hereby mortgage, grant and
convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in
___RUTLAND___ County, Vermont:

*All and the same lands and premises as described in Schedule A which is attached hereto and
incorporated herein by reference.*

which has the address of ___225 State Street___ ___Rutland City___

Vermont ___05701___ ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security
Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant, convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

VERMONT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3046   9/90   *(page 1 of 6 pages)*

GOVERNMENT
EXHIBIT
E

402829

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in not more than twelve monthly payments, at Lender's sold discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, finds and impositions attributable to the Property, which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation security by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien, which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of giving the notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to

Form 3046 9/90  *(page 2 of 6)*

Lender's approval which shall not be unreasonably withheld.  If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss is not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or the pay sums secured by this Security Instrument, whether or not then due.  The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments.  If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

   **6.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for a least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.  Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   **7.  Protection of Lender's Rights in the Property.**  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such a proceeding in bankruptcy, probate, for condemnation or forfeiture or the enforce laws or regulations), then Lender may do an pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

   **8.  Mortgage Insurance.**  If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect.  If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, for an alternate mortgage insurer approved by Lender.  If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect.  Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance.  Loss reserve payments may not longer be required, at he option of Lender, if a mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available

402831

and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

    **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspections specifying reasonable cause for the inspection.

    **10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

    In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date of the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

    Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

    **11. Borrower Not Released, Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of a demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound, Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

    **14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designated by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

    **15. Governing Law; Severability.** This Security Instrument shall be governed by federal law an the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with the applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

402832

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions , Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no accelerations had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) take s such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note, Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be on or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorney's fees and costs of title evidence.

402833

If Lender or Borrower invokes the power of sale, and the Property is judicially ordered to be sold pursuant to such power, Lender shall mail a copy of a notice of sale by registered mail to Borrower at the Property Address or at any other address Borrower delivers to Lender in writing for that purpose. Lender shall publish the notice of sale for the time and in the manner required by applicable law and, without further demand on Borrower, the Property shall be sold at the time and under the terms designated by the court and in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify] VHFA UNIFORM MORTGAGE RIDER | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____      _____ (Seal)
                                        Justine V. Farrow
_____      Social Security Number _____

                                        _____ (Seal)

                                        Social Security Number _____

STATE OF VERMONT
 RUTLAND            COUNTY, ss:

At Rutland        , Vermont, this 15th   day of  August       , 20 00      , personally appeared
 Justine V. Farrow                   and      she      acknowledged the same to be     her     free act and
as signer(s) and sealer(s) of the foregoing instrument and
deed.

                                        Before me, _____
                                                    Notary Public
                                                    My Commission Expires: 02-10-03

CITY OF RUTLAND RECEIVED FOR RECORD
DATE 8-10-00 TIME 9:05 AM
BOOK 403   PAGE 828-835
_____ ASST CITY CLERK
Rt. to Peiber, Kenlan

Form 3046  9/90   (page 6 of 6)

402 933A

EXHIBIT A/SCHEDULE A

Being all and the same lands and premises conveyed to Justine V.
Farrow by Mary F. Baccei, Stephen E. Baccei, Maria T. Reczek and
Gregory E. Baccei by Warranty Deed dated August _____, 2000, to
be recorded in the Rutland City Land Records, and more particu-
larly described in said Deed as follows:

"Being all and the same lands and premises being conveyed to Mary F. Baccei, Stephen F. Baccei,
Maria T. Reczek, and Gregory E. Baccei, by Quit Claim Deed of J. Fed Carbine dated April 11,
1989 and recorded in the City of Rutland Land records in Book 284 at Page 232.

"Being all and the same lands and premises being conveyed to J. Fred Carbine, Jr. by Mary F.
Baccei by warranty deed of even date herewith. The premises are more particularly described as
being all and the same lands and premises conveyed to Andrew G. Baccei and Mary F. Baccei,
husband and wife, (Andrew C. Baccei now deceased) by William R. Mangan and Marion E..
Mangan by deed, dated October 21, 1950 recorded in the land records of the City of Rutland in
Book 90 at page 208. The premises in said deed are bounded and described as follows:

"Being the same land and premises conveyed to the grantors herein by Mary K. Mangan,. by her
deed dated October 15, 1948 and recorded in the City of Rutland Land Records in Book 85 at
Page 369. The land and premises hereby conveyed being therein described d as follows:

Beginning at an iron pin at the intersection of the North line of said State Street Extension and
the East line of said Hazel Street; thence in the last-named line One Hundred and twenty feet
(120') to an iron pin; thence Easterly in a straight line to an iron pin located about Sixty feet (60')
from and West of the West line of Cora E. Crawford and One Hundred and five feet (105') from
the North line of said State Street Extension; thence Southerly in a line parallel with the said
West line of said Crawford to the North line of said State Street Extension; thence Westerly in
the last-named line to the point of beginning.

Being the same lands and premises decreed to Mary K. Mangan by the District of Rutlatd Probate
Cour and dated September 14, 1948 and recorded in the City of Rutland Land Records in Book
84 at page 376 to which decree reference may be had.

Being the same land deeded to William S. Mangan by Elmer E. Shedd and Mary L. Shedd
Perkett, as Administrators of the Estate of Harrison H. Shedd by their deed dated the 29th day of
May .908, and recorded in the City of Rutland Land Records in Book 9 at Page 277; and also of
Elmer E. Shedd by this deed dated the 29th day of May 1908, and recorded in the City of Rutland
Land Records in Book 23, at Page 300, to which deeds and the records thereof reference may be
had for a further and more particular description."

Excepting and reserving herefrom is the conveyance from Mary F. Baccei, Stephen F. Baccei,
Maria T. Reczek and Gregory E. Baccei to Stephen F. Baccei and Karen Baccei, husband and wife,
by Warranty Deed dated January 10, 1995, which is subject to Deferral of Permit # DE-1-1816
dated December 19, 1994 and recorded in the Rutland City Land Records in Book 342 at Page 284.

Reference is also made to State of Vermont, Department of Environmental Conservation,
Homestead Exemption #HE-1-0481 dated December 19, 1994."

402834

NOTICE TO BORROWERS:  THIS RIDER ADDS SUBSTANTIALLY TO THE TERMS OF THE
MORTGAGE.  DO NOT SIGN THIS FORM UNTIL YOU HAVE READ AND UNDERSTOOD IT.

VERMONT HOUSING FINANCE AGENCY

**UNIFORM MORTGAGE RIDER**

**This is a two-sided form.  Please be sure both sides are completed and executed, as required.**

This Uniform Mortgage Rider is made this _15th_ day of _August, 2000_, and is incorporated into and amends
and supplements a Mortgage dated of even date herewith, given by _Justine V. Farrow_ (herein the
"Borrowers")  to secure Borrower's Note to *Vermont Development Credit Union* (herein the "Lender"), and covering the Property
described in the Mortgage and located at

_225 State Street, Rutland, Vermont 05701_

The Borrower and Lender acknowledge that the Mortgage and Note are expected to be assigned to Vermont Housing Finance
Agency (herein "VHFA).

1.      The Borrower and the Lender acknowledge and agree that the Mortgage is being made in conformity with the
        requirements without limitation of Title 10, Chapter 25, Vermont Statutes Annotated, as amended, and the regulations
        adopted pursuant thereto, Section 143 of the Internal Revenue Code of 1986 (herein "Section 143"), and the procedures
        and regulations promulgated thereunder which shall include the Procedural Guide of VHFA (herein the "Requirements").
        In the event that the Borrower has misrepresented or omitted a material fact in the loan application of the Borrower, or
        other documents submitted in support thereof, or does not comply with the requirements of the loan commitment to the
        Borrower, the Mortgage, or the Note which it secures, VHFA may not be in compliance with the foregoing
        Requirements.  Such noncompliance may adversely affect the tax-exempt status of the bonds issued by VHFA (herein the
        "Bonds"), and the ability of VHFA to issue tax-exempt bonds necessary to raise money to continue its Mortgage
        Purchase Program, under which the Mortgage is being made.

2.      Borrower further acknowledges that the Mortgage Purchase Program of VHFA provides, among other things, that the
        Property will be the principal residence of the Borrower.  In consideration of the granting of this loan to Borrower, the
        Requirements, and to prevent waste, impairment or deterioration of the Property secured by this Mortgage, Borrower
        agrees and undertakes that for so long as this Mortgage is in force and effect and has not been discharged, Borrower shall
        occupy the subject premises as Borrower's principal residence.  Furthermore, Borrower shall not sell, convey or transfer
        or agree to sell, convey or transfer the property or any part thereof or interest therein on terms or other circumstances
        where the subject premises cease to be the principal residence of the borrower.

3.      Borrower further acknowledges and agrees that the granting of the loan secured by the Mortgage and the interest rate in
        the Note are contingent upon the inclusion of this Uniform Mortgage Rider in the Mortgage and, that in the absence of
        the provisions contained herein, the Lender would not be able to grant the loan to Borrower on the terms and conditions
        set forth and upon the interest rate established for the loan.

        Borrower acknowledges and agrees that the terms herein are necessary to protect lender against impairment or
        deterioration in its security and against the risk of default and to protect the tax-exempt status of the Bonds.

Complete #4 only if applicable:

4.      A written lease between the Borrower and _____ dated
        _____, _____, and a VHFA Mobile Home Park Lease Agreement Amendment dated
        _____, _____, has been signed by the Borrower and the lessor under the lease and have
        been recorded in the _____ land records.  (Together the lease and amendment are referred
        to herein as the "Lease").  Borrower hereby grants, transfers and assigns the lease to VHFA as additional security under
        the Mortgage.

5.      In recognition of the foregoing, and as a condition to making of the Mortgage Loan, the Borrower covenants and agrees
        that the Lender, or VHFA as the assignee of the Lender, may declare all sums secured by the Mortgage to be immediately
        due and payable upon the occurrence of any of the following:
        a.      If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's or
                VHFA's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to the Mortgage,
                (b) the creation of a purchase-money security interest for household appliances, or (c) transfer by devise, descent
                or by operation of law upon the death of a joint tenant, or
        b.      If the Borrower does not occupy the Property as the Borrower's principal residence within sixty (60) days after
                the date hereof and continue to occupy the Property as such principal residence throughout the term of the
                Mortgage.

VHFA Form #S-604  Rev 5/99  Page 1 of 2

402835

c.  If the Borrower fails to supply any information or document to the Lender or VHFA within ten (10) days after written request therefore provided such information or document has been requested in order to verify whether or not the Mortgage complies with the Requirements and such other conditions of VHFA's Mortgage Purchase Program under which this Mortgage is being financed.

d.  If the Borrower violates any provision of the Lease or is in default of the Lease.

6.  The Borrower acknowledges that the Lender and VHFA have relied upon the information, statements an representations contained in the loan application, the Mortgagor Affidavit and other documents submitted in support of the loan application, in the processing, financing and granting of the Mortgage and determining that the Requirements will be met. THE BORROWER REPRESENTS THAT THE INFORMATION, STATEMENTS AND REPRESENTATIONS CONTAINED WITHIN THE LOAN APPLICATION AND THE MORTGAGE AFFIDAVIT ARE TRUE AND COMPLETE AS OF THE DATE HEREOF AN THAT THERE HAVE BEEN NO MATERIAL CHANGES THEREIN. The loan application, the Mortgagor Affidavit and all other documents submitted in support of the loan application are incorporated herein and made a part hereof. Any misstatement or omission of a material fact in such documents will constitute a default under the Mortgage, and the Note which it secures, and may result in the Lender's or VHFA's declaring all sums secured by the Mortgage to be immediately due and payable. The Borrower agrees to hold the Lender and VHFA harmless from any loss, cost or damages, actions or claims arising out of or related to a misstatement or omission of a material fact in the above described documents.

7.  Upon request of the Borrower, prior to the release of the Mortgage and this Uniform Mortgage Rider, VHFA, as the assignee of the Lender, at VHF's sole option, may make Future Advances to the Borrower. Such Future Advances, with interest thereon, shall be secured by the Mortgage, as amended and supplemented by this Uniform Mortgage Rider, when evidenced by promissory notes stating that said promissory notes are secured thereby and hereby.

8.  In the event of any conflict between the provisions hereof and the provisions of the Mortgage, or the Note which is secures, the provisions of this Uniform Mortgage Rider shall control.

9.  The term Borrower used herein shall include any reference to Mortgagor, Grantor, Debtor, or any party so described and defined in the mortgage loan documents.

_____    _____ (L.S.)
Witness                            Borrower – Justine V. Farrow

_____    _____ (L.S.)
Witness                            Borrower –

_____    _____ (L.S.)
Witness                            Borrower –

_____
Witness


STATE OF VERMONT
COUNTY OF __Rutland_____, ss.

     At __Rutland_____, _Vermont_, in said County, this __15th__ day of __August, 2000_____, personally appeared _____Justine V. Farrow_____ the signer(s) and sealer(s)of the foregoing instrument, and being duly sworn in accordance with law, acknowledged the same to be __her__ free act and deed, and affirmed the truth of the representations of the Borrower contained therein.

                         BEFORE ME, _____
                                    NOTARY PUBLIC
                                    My Commission Expires:    02-10-03

*1809-2261*
First Lien

**VERMONT HOUSING FINANCE AGENCY**
**STEPPED INTEREST RATE NOTE**
This is a two-sided form. Please be sure both sides are completed and executed, as required.

_225 State Street, Rutland, Vermont 05701_
Property Address

_August 15, 2000_ _____ _Rutland,_ ____ Vermont

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ _12,500.00_ (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is _Vermont Development Credit Union_ . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly interest rate of _5.600_ % for the first year, _6.100_ % for the second year, _6.600_ % for the third year, and _7.100_ % for years four through thirty.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
   (A) **Time and Place of Payments**
     I will pay principal and interest by making payments every month.

     I will make my monthly payments on the _1st_ day of each month beginning on _October 1, 2000_.

     I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on _September 1, 2030_, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

     I will make my monthly payments at _18 Pearl Street, Burlington, Vermont 05401_ or at a different place as is required by the Note Holder.

   (B) **Amount of Monthly Payments**
     My monthly payment will be in the amount of U.S. $ _72.76_ for the first year, $ _75.66_ for the second year, $ _79.56_ for the third year, and $ _83.45_ for years four through thirty.

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment".

When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
   (A) **Late Charge for Overdue Payments**
     If the Note Holder has not received the full amount of any monthly payment by the end of _fifteen (15)_ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charges will be _five percent (5.00%)_ of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   (B) **Default**
     If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   (C) **Notice of Default**
     If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I/we owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.
   (D) **No Waiver by Note Holder**
     Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

VHFA Form #R-701    Page 1 of 2    Rev 3/99

GOVERNMENT EXHIBIT
F

# 1809226l

(E)   **Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses will include, for example, reasonable attorney fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower: If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise if prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### NOTICE TO COSIGNER

Your signature on this Note means that you are equally liable for repayment of this loan.
If the Borrower does not pay, the Lender has a legal right to collect from you.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

Borrower – Justino V. Farrow

Borrower –

Borrower –

Witness as to all

Pay to the order of Vermont Housing Finance Agency without recourse.

By: _____

as Duly Authorized Agent of Vermont Development Credit Union

Date: _____

VHFA Form #5-701         Page 2 of 2         Rev 5/99

**ASSIGNMENT OF MORTGAGE**

*[handwritten annotations in top right margin, partially illegible]*

By the Opportunities Credit Union formerly Vermont Development Credit Union (the "Credit Union") having its principal office at 25 Winooski Falls Way, Suite 203, PO Box 67, Winooski, Vermont 05404 to USDA Rural Development, of the State of Vermont, agency organized and existing under the Laws of the State of Vermont, having an address of 87 State Street, Suite 324, Montpelier, VT 05601.

The Credit Union, in consideration of the acceptance by the Buyer of its duties under the Loan Servicing Agreement, and other good and valuable consideration, and pursuant to the Loan Servicing Agreement does hereby give, grant, bargain, seal, assign and convey to the Buyer, TO HAVE AND TO HOLD, the same, upon the terms set forth herein and in the Loan Servicing Agreement the land records of the City of Rutland, State of Vermont as follows:

| LOAN NUMBER | NAME | DATE | BOOK | PAGE |
|---|---|---|---|---|
| 0000017249 | Justine V. Farrow | 08/15/2000 | 402 | 828-835 |

SIGNED IN THE PRESENCE OF:

Amberly Ploof, Duly Authorized Agent

Opportunities Credit Union

BY:

Michael Cardinal– Operations & Asset Recovery Supervisor

STATE OF VERMONT
COUNTY OF CHITTENDEN, SS.

In the Town/City of *Winooski* in said County this 26th day of January, 2018 before me appeared Michael Cardinal to me personally known who being by me duly sworn, did say that he is the Duly Authorized Agent of Opportunities Credit Union, the Credit Union described in and which executed the foregoing instrument, and that the foregoing instrument was signed by him on behalf of said Credit Union by authority of its Board of Directors, and he acknowledged said instrument to the free act and deed of said Credit Union.

Before me,

Adam Lougee - Notary Public

My Commission Expires: 02/10/2019

GOVERNMENT
EXHIBIT
G

JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS
United States of America

## DEFENDANTS
Justine Farrow, et al.

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Caledonia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Melissa A.D. Ranaldo, AUSA, U.S. Attorney's Office, P.O. Box 570, Burlington, VT 05402, (802) 951-6725

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                               *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from Another District *(specify)*
☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1490a
Brief description of cause:
Foreclosure

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**   121,301.56

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   9/9/19   SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE  1012   MAG. JUDGE_____

2:19-cv-156